[895 NYS2d 778]

In the Matter of the Accounting by P. OKKE POSTMA, as Preliminary Executor of ANDREW KARSCHMIDT, Deceased.

Surrogate's Court, Westchester County, December 16, 2009

## APPEARANCES OF COUNSEL

*Hollyer Brady, LLP*, New York City (*James B. Keaney* of counsel), for petitioner. *Beck Liebman Petrone P.C.*, White Plains

(*Denyse M. Fecteau* of counsel), for administratrix. *Salvatore J. Rico*, Albany, for New York State Department of Taxation and Finance.

### OPINION OF THE COURT

ANTHONY A. SCARPINO, JR., S.

In this accounting proceeding, the petitioner, P. Okke Postma, the preliminary executor of the estate of Andrew Karschmidt, requests that the court fix and allow reasonable fees for the professional services rendered to the estate and direct distribution. A hearing on the matter of counsel fees has been waived (22 NYCRR 207.45).

On November 13, 2002, the decedent (who was unmarried and without children) executed a form will which left all of his assets to his sister Sophie K. Hoss. In the event that Ms. Hoss predeceased him, he left one half of his estate to his niece Karen Hardinge and nephew Billy Karschmidt and the other half of his estate to the First Reformed Church in Hastings-on-Hudson, New York at which the Reverend P. Okke Postma is the pastor. The instrument named Reverend Postma as the executor.

The decedent's signature appears below the dispositive provisions and beneath that is the signature and notary stamp of Rivka H. Gelbtuch. (Ms. Gelbtuch was an employee of the nursing home where the decedent resided.) On the reverse side of the form, there is an attestation clause. Reverend Postma signed below the clause as the only witness to the instrument.

Underneath the attestation clause is an affidavit which contains language similar to that found in a self-proving affidavit. The affidavit portion provides that Reverend Postma and the decedent personally appeared before the notary. Reverend Postma, as the attesting witness, subscribed and swore to the affidavit before Ms. Gelbtuch, who signed below as the notary public.

On April 11, 2007, the decedent died, survived by Michael, his incapacitated brother, and his niece and nephew. Ms. Hoss predeceased him. On December 6, 2007, Reverend Postma petitioned for letters testamentary, offering the instrument for probate. Listed as witnesses on page one of the probate application were both Reverend Postma and Ms. Gelbtuch, the notary. Reverend Postma filed an affidavit of heirship, and he and Ms. Gelbtuch also filed affidavits of attesting witness pursuant to SCPA 1406. Preliminary letters testamentary issued to Reverend Postma.

On December 3, 2008, by decision and order, this court denied the will probate, holding that since it was clear from both the attestation clause and the affidavit contained in the propounded instrument that Reverend Postma was the sole attesting witness, the instrument did not meet the statutory execution requirements found in EPTL 3-2.1. Because the petition was denied probate on execution grounds, the court did not reach the issue of whether Reverend Postma's relationship with the First Reformed Church constituted a beneficial interest which under EPTL 3-3.2 (a) (1) could render void the bequest to the church.

On March 17, 2009, letters of administration issued to the decedent's niece.

On May 7, 2009, Reverend Postma filed an account of his proceedings as preliminary executor with a petition for judicial settlement thereon. In that petition, he is requesting the payment of $2,623.50 to his counsel for attorney services and $684.44 in disbursements. For the reasons stated below, the court denies the payment from the estate of Reverend Postma's counsel fees and disbursements.

In accordance with SCPA 2302 (3) (a), costs payable out of the estate may be awarded in a contested probate proceeding to an "unsuccessful proponent named . . . in the will when propounded by him . . . in good faith as the last will of the decedent." While this probate matter was not per se contested, the law requires the court to be "satisfied with the genuineness of the will and validity of its execution" before it may be admitted to probate (SCPA 1408 [1]; *see also Matter of Campbell*, NYLJ, June 11, 1998, at 32, col 3). In so doing, the court is "performing a judicial function which [it] cannot delegate" (*Matter of Weeks*, 39 Misc 2d 696, 697 [1963], *affd* 20 AD2d 544 [2d Dept 1963]).

In *Matter of Whelan* (15 NY Civ Pro Rep 273 [Sur Ct, NY County 1888]), Surrogate Ransom assessed the costs in the probate contest against a will contestant he found did not file objections in good faith. In doing so, the court stated that the rules and procedures of Surrogate's Court practice in conjunction with the case law constitute all the information a litigant would need to have to know whether or not he has a basis for maintaining a claim. On this issue, the Surrogate wrote

> "Good faith means not only an earnest, honest belief in the justice of one's claim, but also, in the

respects now under consideration, I hold it to be the conscientious exercise of reasonable business judgment which should induce the party to avoid needless delay and expense, by taking advantage of his opportunity and the right given him by law, to attend on the return of the citation, and obtain leave to cross-examine the subscribing witnesses. On the affidavit of the contestant's attorney in this proceeding, one fact is very plain, to-wit: That he has no facts, absolutely none, on which to found a contest, and his only hope was evidently grounded upon some notion that delay and expense might in some way benefit him; or that the subscribing witnesses, either or both, might turn out to be forgetful or fraudulent persons." (15 NY Civ Pro Rep at 275.)

Furthermore, CPLR 8303-a (c) (ii) defines a frivolous claim as one which was "commenced or continued in bad faith without any reasonable basis in law or fact and could not be supported by a good faith argument for an extension, modification or reversal of existing law" (*see also Zysk v Kaufman, Borgeest & Ryan, LLP*, 53 AD3d 482 [2d Dept 2008]).

The statutory execution requirements found in EPTL 3-2.1 mandate two witnesses to prove a will. In addition, the case law uniformly states that if the capacity in which a person signs does not appear to be that of a witness but of a notary public purporting to take an oath, the statute of wills has not been complied with (*see Matter of McDonough*, 201 App Div 203 [3d Dept 1922]).

Here, the propounded instrument only had one witness. Reverend Postma secured the execution of the instrument, and the church was a 50% beneficiary of the estate assets. Reverend Postma's argument that the notary could suffice as a witness is belied by the instrument which clearly shows only his signature as having witnessed the instrument. The SCPA 1406 affidavit of Ms. Gelbtuch, which was executed $5^1/_2$ years after the execution of the instrument, was totally inconsistent with the instrument. Furthermore, the services of the attorney for which compensation is sought were not only of no benefit to the estate in that they were entirely devoted to the probate proceeding but they caused needless delay.

The proceeding to probate the proffered instrument as the last will and testament of the decedent was commenced without any reasonable basis in law or fact and cannot be supported by

a good faith argument for an extension, modification or reversal of existing law and was filed only in the hope that the proceeding might in some way benefit Reverend Postma or his constituents.

Accordingly, the court finds that the offering of this instrument for probate was lacking in good faith.